**2014-1301**

CASE PARTICIPANTS ONLY

In The

# United States Court Of Appeals
## For The Federal Circuit

# IN RE CUOZZO SPEED TECHNOLOGIES, LLC.,

*Appellant.*

**Appeal from the United States Patent and Trademark Office,
Patent Trial and Appeal Board.**

_____

## REPLY BRIEF OF APPELLANT

_____

**John R. Kasha**
**KASHA LAW LLC**
**14532 Dufief Mill Road**
**North Potomac, MD  20878**
**(703) 834-1886**

**Timothy M. Salmon**
**CUZZO SPEED**
 **TECHNOLOGIES LLC**
**85 Berkeley Circle**
**Basking Ridge, NJ  07920**
**(516) 319-9871**

*Counsel for Appellant*          *Counsel for Appellant*

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................... iii

TABLE OF ABBREVIATIONS ............................................................. vii

SUPPLEMENTAL STATEMENT OF RELATED CASES ...................................ix

I.    ARGUMENT ...................................................................................1

    A.    The PTAB Violated 35 U.S.C. § 314(a) By Instituting IPR As
          To Claims 10 and 14 Of The '074 Patent Based On Grounds
          Not Raised In The Petition .................................................................1

        1.    § 314(d) does not preclude judicial review of all aspects
             of the PTAB's institution decision...............................................2

        2.    Comparing IPR to *inter partes* reexamination confirms
             Cuozzo's interpretation of § 314(d)...........................................8

    B.    The PTAB Exceeded Its Statutory Authority And Violated Its
          Own Rules By Creating New Grounds Of Rejection For Claims
          10 And 14 ......................................................................................10

    C.    The PTAB Construed "Integrally Attached" Under The
          Incorrect Standard And To The Exclusion Of Embodiments Of
          The Invention .................................................................................16

        1.    PTO's justifications for using the BRI standard ring
             hollow in the context of the new IPR procedure ......................16

        2.    The PTO exceeded its rulemaking authority by
             implementing the BRI standard in IPR......................................18

        3.    The PTAB's construction of "integrally attached" is
             erroneous under both *Phillips* and BRI....................................20

i

a.  The PTAB's construction of "integrally attached" is contrary to the specification ........................................21

D.  Claim 10 Is Patentable Over Aumayer, Evans And Wendt ...............23

1.  Aumayer does not disclose a display controller that shows speed readings in violation of "the speed limit at a vehicle's present location"........................................23

2.  There is no motivation to combine Aumayer, Evans and Wendt ........................................................................26

E.  Claim 10 Is Patentable Over Tegethoff, Awada, Evans And Wendt ............................................................................27

1.  Tegethoff does not disclose a display controller that shows speed readings in violation of "the speed limit at a vehicle's present location"........................................27

2.  Tegethoff and Awada are fundamentally different, not alternatives ................................................................28

F.  Any Modification Of The PTAB's Claim Construction Requires Remand For Reconsideration Of Cuozzo's Motion To Amend ........................................................................29

II.  CONCLUSION............................................................................30

CERTIFICATE OF FILING AND SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Abbott Labs. v. TorPharm, Inc.*,
  503 F.3d 1372 (Fed. Cir. 2007) ...................................................29

*In re Baker Hughes, Inc.*,
  215 F.3d 1297 (Fed. Cir. 2000) ..................................................20

*In re Biedermann*,
  733 F.3d 329 (Fed. Cir. 2013) ...................................................15

*In re Boon*,
  439 F.2d 724 (CCPA 1971) ........................................................15

*In re Hiniker Co.*,
  150 F.3d 1362 (Fed. Cir. 1998) ...................................................9

*Lab. Corp. of Am. Holdings v. Chiron Corp.*,
  394 F.3d 1327 (Fed. Cir. 2004) ..................................................30

*Leapfrog Enters., Inc. v. Fisher-Price, Inc.*,
  485 F.3d 1157 (Fed. Cir. 2007) ..................................................26

*In re Leithem*,
  661 F.3d 1316 (Fed. Cir. 2011) ..................................................14

*Lighting Ballast Control LLC v. Philips Elecs. N.A. Corp.*,
  744 F.3d 1272 (Fed. Cir. 2014) ..................................................20

*In re Moore*,
  444 F.2d 572 (CCPA 1971) ........................................................14

*St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*,
  ___ F.3d ___, 2014 WL 1623676 (Fed. Cir. Apr. 24, 2014) .....................7, 8

iii

*In re Skvorecz*,
    580 F.3d 1262 (Fed. Cir. 2009) ................................................................20

*In re Stepan Co.*,
    660 F.3d 1341 (Fed. Cir. 2011) ................................................................13

*Tafas v. Doll*,
    559 F.3d 1345 (Fed. Cir. 2009) ..........................................................18, 19

*Thermtron Products, Inc. v. Hermansdorfer*,
    423 U. S. 336 (1976).......................................................................... 19-20

*Whitman v. American Trucking Association*,
    531 U.S. 457 (2001)...................................................................................19

**Statutes**

5 U.S.C. § 702 .................................................................................................5, 8

35 U.S.C. § 101 ....................................................................................................4

35 U.S.C. § 102 ..............................................................................................3, 10

35 U.S.C. § 103 ..............................................................................................3, 10

35 U.S.C. § 154(a)(1)....................................................................................18, 20

35 U.S.C. § 311(a) ...........................................................................................2, 5

35 U.S.C. § 311(b) ...........................................................................................3, 4

35 U.S.C. § 311(c) ................................................................................................3

35 U.S.C. § 312(a) ................................................................................................3

35 U.S.C. § 312(a)(3)...............................................................................10, 13, 16

35 U.S.C. § 312(c) ................................................................................................8

35 U.S.C. § 313 ..................................................................................................15

35 U.S.C. § 314 ................................................................................2, 8

35 U.S.C. § 314(a) .............................................................................*passim*

35 U.S.C. § 314(d) .............................................................................*passim*

35 U.S.C. § 315(a) ...................................................................................3

35 U.S.C. § 315(b) ...................................................................................3

35 U.S.C. § 315(e)(1) ...............................................................................3

35 U.S.C. § 316 ......................................................................................19

35 U.S.C. § 316(a) .................................................................................19

35 U.S.C. § 316(a)(1) .............................................................................19

35 U.S.C. § 316(a)(4) .........................................................................18, 19

35 U.S.C. § 316(a)(6) .............................................................................19

35 U.S.C. § 316(a)(7) .............................................................................19

35 U.S.C. § 316(a)(8) .........................................................................15, 29

35 U.S.C. § 316(a)(11) .............................................................................8

35 U.S.C. § 316(d) ....................................................................................6

35 U.S.C. § 316(d)(1) .............................................................................17

35 U.S.C. § 316(d)(1)(B) .......................................................................6, 7

35 U.S.C. § 316(e) .................................................................................29

35 U.S.C. § 318(a) ...............................................................................5, 6

35 U.S.C. § 319 ...............................................................................6, 7

35 U.S.C. § 321 *et seq*...................................................................3

**Regulations**

37 C.F.R. § 1.121 ...............................................................................17

37 CFR § 41.50(b) .............................................................................14

37 CFR § 41.77(b) .............................................................................14

37 C.F.R. § 42.104 ...............................................................10, 13, 16

37 C.F.R. § 42.121 .............................................................................17

**Other Authorities**

157 Cong. Rec. E (daily ed. June 23, 2011) (statement of Rep. Smith)....................4

Manual of Patent Examining Procedure (MPEP) § 2258 ........................................18

# TABLE OF ABBREVIATIONS

**Parties**

| | |
|---|---|
| Cuozzo | Patent Owner-Appellant Cuozzo Speed Technologies LLC |
| Garmin | Petitioner-Appellee Garmin International, Inc. |

**Terms**

| | |
|---|---|
| '074 Patent | U.S. Patent No. 6,778,074 to Cuozzo |
| A__ | Joint Appendix at page(s), with (column:lines) for patents |
| AIA | Leahy-Smith America Invents Act |
| Aumayer | U.S. Patent No. 6,633,811 to Aumayer |
| Awada | U.S. Patent No. 6,515,596 to Awada |
| BRI | Broadest Reasonable Interpretation |
| Court | United States Court of Appeals for the Federal Circuit |
| C.Br.__ | Cuozzo's opening brief at page(s)____ |
| Evans | U.S. Patent No. 3,980,041 |
| IPR | *Inter Partes* Review |
| Petition | Garmin's Petition for *Inter Partes* Review of '074 Patent |
| PTAB | Patent Trial and Appeal Board |
| PTO | United States Patent and Trademark Office |
| PTO.Br.__ | PTO's opening brief at page(s)____ |

Tegethoff   German patent application publication no. DE 197 55 470 A1

Wendt    U.S. Patent No. 2,711,153

  All emphasis in this brief is added unless otherwise indicated.

## SUPPLEMENTAL STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rule 47.5(a), appellant provides as follows:

(a) There have been no previous appeals in this proceeding.

(b) The following cases may be directly affected by the Court's decision in
this case: *Cuozzo Speed Technologies LLC v Cellco Partnership*, Case
No. 4:14-cv-00393 (E.D. Tex.); *Cuozzo Speed Technologies LLC v
Reach Unlimited Corp.*, Case No. 4:14-cv-00394 (E.D. Tex.); *Cuozzo
Speed Technologies LLC v RM Acquisition LLC*, Case No. 4:14-cv-00395
(E.D. Tex.); *Cuozzo Speed Technologies LLC v Nokia Inc.*, Case No.
4:14-cv-00396 (E.D. Tex.); *Cuozzo Speed Technologies LLC v Motorola
Mobility LLC*, Case No. 4:14-cv-00397 (E.D. Tex.); *Cuozzo Speed
Technologies LLC v Fullpower Technologies Inc.*, Case No. 4:14-cv-
00398 (E.D. Tex.); *Cuozzo Speed Technologies LLC v MITAC Digital
Corp.*, Case No. 4:14-cv-00399 (E.D. Tex.); and *Cuozzo Speed
Technologies LLC v Fujitsu Ten Corp of America Inc.*, Case No. 4:14-cv-
00400 (E.D. Tex.).

## I.    ARGUMENT

### A.    The PTAB Violated 35 U.S.C. § 314(a) By Instituting IPR As To Claims 10 and 14 Of The '074 Patent Based On Grounds Not Raised In The Petition

The PTAB does not have discretion to create a new ground of rejection for a claim in an IPR.  C.Br. 25-28.  Garmin's Petition challenged claim 10 on only three grounds:  (1) anticipation by Aumayer, (2) obvious over Tegethoff in view of Awada, and (3) obvious over Tokunaga in view of Hamamura.  A276-277.  The PTAB denied institution of IPR on each of these grounds.  A299-300.  However, in violation of 35 U.S.C. § 314(a) (which limits the PTAB's institution determination to "information presented *in the petition*"), the PTAB went beyond the Petition, engaging in its own patentability analysis and instituting IPR as to claims 10 and 14 based on the combinations of Aumayer, Evans and Wendt, and Tegethoff, Awada, Evans and Wendt (combinations applied by Garmin solely to dependent claim 17).  A292-93; A296.  The PTAB improperly devised a rationale for combining the references (because it had rejected Garmin's) and mapped these new combinations to claims 10 and 14 (because it had rejected Garmin's patentability analyses).  A292-93; A296.  The PTAB does not have discretion to formulate new grounds of rejection in an IPR, and doing so is contrary to statute and regulation.

PTO erroneously asserts that the PTAB's institution decision is completely shielded from judicial review under 35 U.S.C. § 314(d) even in the case, as is here, where institution is an *ultra-vires* act. PTO's argument (1) is based on an incorrect reading of 35 U.S.C. § 314 and a disregard for the multitude of statutory requirements that must be met to institute an IPR, and (2) misapplies this Court's precedent related to institution of reexamination proceedings.

**1.  § 314(d) does not preclude judicial review of all aspects of the PTAB's institution decision**

The PTAB is required to address a multitude of threshold jurisdictional statutory requirements when deciding whether to institute IPR. However, PTO asserts that the PTAB can institute an IPR in violation of any of these statutory requirements, and § 314(d) completely precludes judicial review of such action (even after a final written decision in the IPR). PTO.Br. 29. To the contrary, a proper reading of Chapter 31 clearly evinces that the only determination which cannot be appealed at the institution phase under § 314(d) is the PTAB's *discretionary* determination that there is a reasonable likelihood that the petitioner will prevail on its challenge as to at least 1 of the claims.

Chapter 31 sets forth several non-discretionary threshold jurisdictional requirements that must be met for an IPR to be instituted:

- the petition must be filed by a person who is not the patent owner (35 U.S.C. § 311(a));

2

- the grounds of unpatentability must be limited to 35 U.S.C. § 102 or 103 and only based on patents or printed publications (35 U.S.C. § 311(b));

- the petition must be filed after the later of 9 months after the patent is granted and after a post-grant review under 35 U.S.C. § 321 *et seq.* is terminated (35 U.S.C. § 311(c));

- the petition must contain all of the statutory requirements in 35 U.S.C. § 312(a)

- the PTAB's institution decision must be limited to the information presented in the petition (35 U.S.C. § 314(a));

- the petitioner or real party in interest cannot have filed a civil action challenging the validity of a claim of the patent (35 U.S.C. § 315(a));

- the petitioner, real party in interest or privy of the petitioner cannot have been served with a complaint alleging infringement of the patent more than 1 year before the date on which the petition is filed (35 U.S.C. § 315(b)); and

- the petitioner, real party in interest or privy of the petitioner did not previously file an IPR petition challenging the patent and a final written decision was issued (35 U.S.C. § 315(e)(1)).

If any of these non-discretionary requirements are not met, an IPR cannot be instituted.

3

Along with addressing each of the non-discretionary requirements, the PTAB must make a discretionary determination as to whether "the information presented in the petition…shows that there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a). The "reasonable likelihood of prevailing (RLP)" is a standard that replaced the "substantial new question of patentability (SNQ)" standard associated with *inter partes* reexamination, and Congress explained that the RLP standard was a "high threshold" that required a petitioner to "persuade a panel of [administrative patent] judges at the outset of the proceeding that it is more likely than not that the patent is invalid." 157 Cong. Rec. E (daily ed. June 23, 2011) (statement of Rep. Smith). But, the PTAB can only reach this discretionary determination under the RLP standard if all of the non-discretionary requirements are met. Under § 314(d), the PTAB's discretionary determination under the RLP standard is "final and nonappealable." 35 U.S.C. § 314(d).

PTO incorrectly asserts that § 314(d) completely insulates the PTAB's institution decision from judicial review, even as to the non-discretionary requirements. PTO.Br. 31-32. For example, under PTO's theory, the PTAB could institute an IPR as to grounds of unpatentability under 35 U.S.C. § 101 in contravention of 35 U.S.C. § 311(b), and this *ultra-vires* act would be unreviewable by this Court. Such an interpretation of § 314(d) is contrary to the

4

language of § 314(a) and established law.  5 U.S.C. § 702 ("A person suffering

legal wrong because of agency action, or adversely affected or aggrieved by

agency action within the meaning of a relevant statute, is entitled to judicial review

thereof.").

Section 314(d) states, "*[t]he determination* by the Director whether to

institute an inter partes review *under this section* shall be final and

nonappealable."  35 U.S.C. § 314(d).  The only determination that is made "under

this section" is the discretionary determination under the RLP standard based on

the "information presented in the petition."  35 U.S.C. § 314(a).  But, the non-

discretionary statutory requirements are not subject to the PTAB's

"determination."  For example, the PTAB cannot "determine" whether to go

beyond the petition and find new prior art (§ 314(a) confines the institution

decision to "information presented *in the petition*") or whether to institute an IPR

based on a petition filed by the patent owner (barred by § 311(a)).  Institution in

contravention of any statutory non-discretionary requirement is an ultra-vires act

that is void.

PTO attempts to support its strained interpretation of § 314(d) by reference

to the statutory right to appeal the PTAB's final written decision in an IPR.

PTO.Br. 30-32.  Section § 318(a) requires the PTAB to issue "a final written

decision with respect to the patentability of any patent claim challenged by the

petitioner and any new claim added." 35 U.S.C. § 318(a). Any party dissatisfied with the final written decision may appeal. 35 U.S.C. § 319. PTO asserts that the only issue subject to appeal is the PTAB's final decision as to the patentability of the claims. PTO.Br. 32. This is incorrect for three reasons.

First, the final written decision must necessarily include the PTAB's determination that all of the statutory non-discretionary requirements have been met. Under § 318(a), the PTAB can only render a final written decision "*[i]f an inter partes review is instituted* and not dismissed." 35 U.S.C. § 318(a). Clearly, therefore, the final written decision subsumes the jurisdictional decisions made by the PTAB on institution, because the PTAB only issues a final written decision if the IPR is properly instituted.

Second, PTO does not challenge Cuozzo's right under § 319 to appeal the PTAB's decision on Cuozzo's motion to amend. PTO.Br. 60-61. However, a decision on a motion to amend is not solely a determination with respect to patentability of an amended claim. For example, under § 316(d), a patent owner may file a motion to amend to "propose a *reasonable* number of substitute claims." 35 U.S.C. § 316(d)(1)(B). The PTAB may deny a motion to amend if a patent owner proposes an unreasonable number of substitute claims regardless of whether the substitute claims are determined to be patentable. Alternatively, the PTAB may grant a motion to amend over an objection that the number of substitute

6

claims is unreasonable. Neither decision would be based on the patentability of the substitute claims; it would relate solely to whether the number of substitute claims was "reasonable" under § 316(d)(1)(B). But, the PTAB's decision on the motion to amend is incorporated into its final written decision (as it was here, A49), and PTO does not dispute that any party dissatisfied with the PTAB's decision on the motion may appeal under § 319. Therefore, by not challenging Cuozzo's right to appeal the PTAB's decision on its motion to amend, PTO admits that the right to appeal under § 319 is not limited solely to patentability.

Finally, PTO is correct that § 314(d) does not merely postpone judicial review of the PTAB's discretionary determination under the RLP standard. PTO.Br. 32-33. However, this does not mean that the PTAB's exercise of jurisdiction is completely immune from judicial review. It is based on the logical view that the PTAB's discretionary determination under the RLP standard will ultimately be replaced by the PTAB's patentability determination with respect to the remaining challenged claims and substitute claims in the final written decision. *St. Jude Med., Cardiology Div., Inc. v. Volcano Corp.*, ___ F.3d ___, 2014 WL 1623676 at *2-3 (Fed. Cir. Apr. 24, 2014). Congress clearly intended to preclude direct judicial review of the discretionary determination under the RLP standard at the institution phase, because an interlocutory appeal would preclude the PTAB from adhering to its statutory mandate to issue a final written decision in no more

than 18 months after institution.  35 U.S.C. § 316(a)(11); *see St. Jude*, 2014 WL 1623676 at *2-*3 (holding that an appeal in an IPR can only be taken from a final written decision).

Accordingly, § 314(d) precludes judicial review only of the PTAB's discretionary determination under the RLP standard in its institution decision.  But, institution in violation of any of the non-discretionary requirements is always subject to appeal.  5 U.S.C. § 702.

### 2. Comparing IPR to *inter partes* reexamination confirms Cuozzo's interpretation of § 314(d)

PTO admits, "[t]he appealability bar [in *inter partes* reexamination] foreclosed review only of the 'substantial new question of patentability' issue, without limiting the Court's jurisdiction to review other restrictions on the commencement of inter partes reexamination."  PTO.Br. 36.  The appealability bar in *inter partes* reexamination, 35 U.S.C. § 312(c) (2000), was nearly identical to § 314(d), both of which reference the discretionary determination under the relevant standard (RLP/SNQ):

> "A determination by the Director under subsection (a) shall be final and non-appealable."  35 U.S.C. § 312(c) (2000)

> "The determination by the Director whether to institute an inter partes review under this section shall be final and nonappealable."  35 U.S.C. § 314.

Given the similarity of the statutes and PTO's admission, it is clear that the only determination insulated from judicial review under § 314(d) is the PTAB's discretionary determination under the RLP standard.

This Court's holding in *In re Hiniker Co*., 150 F.3d 1362 (Fed. Cir. 1998) confirms this interpretation. After the Board affirmed the examiner's rejections in a reexamination proceeding, Hiniker appealed, arguing that the reexamination should not have been instituted, because the PTO improperly applied the SNQ standard. *Id.* at 1366-67. This Court held

> [s]ection 303, the provision that Hiniker argues was violated here, is directed toward the Commissioner's authority to institute a reexamination, and there is no provision granting us direct review of that decision. Any error in that decision was washed clean during the reexamination proceeding." *Id.*

Thus, *Hiniker* was specifically directed to the appeal of the Commissioner's determination as to whether the SNQ standard was met, but does not stand for the broad proposition asserted by PTO that "***any*** error" in commencing a reexamination is unreviewable. PTO.Br. 35.

Furthermore, Cuozzo does not contend that the PTAB incorrectly applied the RLP standard. The PTAB should never have reached the discretionary determination under the RLP standard, because a statutory non-discretionary requirement was not met. Garmin did not present any information "in the petition" that applied the combinations of references as to claim 17 to claims 10 and 14.

9

Accordingly, like reexamination's appealability bar as to the determination under the SNQ standard, the only determination in IPR that is "washed clean" by institution and not subject to appeal is the discretionary determination under the RLP standard. As PTO admits, this Court's jurisdiction to review other threshold non-discretionary jurisdictional requirements is not limited. PTO.Br. 36.

### B.     The PTAB Exceeded Its Statutory Authority And Violated Its Own Rules By Creating New Grounds Of Rejection For Claims 10 And 14

PTO acknowledges that the PTAB denied all of the grounds of unpatentability alleged by Garmin in the Petition as to claims 10 and 14. PTO.Br. 16. This undisputed fact alone is sufficient to show that the PTAB exceeded its authority under § 314(a) and violated 37 C.F.R. § 42.104 by instituting the IPR as to claims 10 and 14, because there was no "information presented *in the petition*" that could have shown that Garmin would prevail on these grounds. 35 U.S.C. § 314(a). Garmin never raised these grounds as to claims 10 and 14. 35 U.S.C. § 312(a)(3); *see also* 37 C.F.R. § 42.104 (for each challenged claim, the petition "must identify" "the claim", "the specific statutory grounds under 35 U.S.C. § 102 or 103 on which the challenge to the claim is based and the patents or printed publications relied upon for each ground" and "must specify where each element of the claim is found in the prior art patents or printed publications relied upon.").

10

PTO desperately tries to save the PTAB's overreach by asserting that the grounds raised as to dependent claim 17 could be applied to claims 10 and 14 from which claim 17 depends, "because those claims necessarily must be broader than claim 17, Garmin 'implicitly' made an assertion that claims 10 and 14 are unpatentable if claim 17 is unpatentable." PTO.Br. 38 (internal citation omitted). Cuozzo agrees that claims 10 and 14 are broader than claim 17, and an assertion of invalidity of a dependent claim necessarily requires that the claims from which it depends are invalid. However, this basic premise does not permit the PTAB to violate § 314(a) by denying the express grounds of unpatentability alleged by a petitioner, creating a new permutation of the cited references and supplying its own rationale for their combination. In doing so, the PTAB's institution decision is not based on "information presented *in the petition*," as required under § 314(a), because the PTAB refused to institute based on the information presented in the petition. Furthermore, it is worth noting that the PTAB did not apply this "implicit allegation of unpatentability" theory to any of the other dependent claims. Doing so would have improperly "mushroomed," for example, Garmin's three expressly alleged grounds of unpatentability as to claim 10 into an additional eighteen alleged grounds of unpatentability (because all of the expressly alleged grounds of unpatentability as to claims 11-19 which depend directly or indirectly from claim 10 would have been applied to claim 10). C.Br. 22-23.

With regard to claim 10, the PTAB expressly rejected Garmin's allegation that Aumayer and Tegethoff each disclosed the "integrally attached" limitation. A288-289 (as to Aumayer); A293 (as to Tegethoff). And, Garmin did not allege that any of the other cited references cured this deficiency in Aumayer and Tegethoff. A193 ("Aumayer teaches each of the limitations recited in independent claim 10" and citing Evans solely to address the added limitation in claim 14); A194 ("The combination of Tegethoff and Awada teaches each of the limitations recited in independent claim 10" and citing Evans solely to address the added limitation in claim 14); A197 ("The combination of Aumayer and Evans teaches each of the limitations recited in claims 10 and 14." and citing Wendt solely to address the added limitations in claim 17); A198 ("The combination of Tegethoff, Awada, and Evans teaches each of the limitations recited in claims 10 and 14" and citing Wendt solely to address the added limitations in claim 17). Furthermore, the PTAB expressly rejected Garmin's allegation that Aumayer and Tegethoff could each be combined with Evans – "Petitioner has not articulated a credible rationale for combining the teachings of Aumayer and Evans." A290; A294 ("Petitioner has not articulated a credible rationale for combining the teachings of Tegethoff and Evans"). However, despite rejecting all of Garmin's assertions as to Aumayer and Tegethoff, and their respective combination with Evans, the PTAB asserted that

Wendt met the "integrally attached" limitation and provided the basis for combining Evans with Aumayer and Tegethoff, respectively. A292; A296.

It is clear from the statute, regulations implemented by the PTO and this Court's precedent that the PTAB is not permitted to formulate a new ground of rejection in an IPR. "Whether the Board relied on a new ground of rejection is a legal question that we review de novo." *In re Stepan Co.*, 660 F.3d 1341, 1343 (Fed. Cir. 2011).

First, the PTAB's discretionary determination under the RLP standard is limited to "information presented ***in the petition***." 35 U.S.C. § 314(a). The information presented in Garmin's Petition as to claims 10 and 14 was three alleged grounds of unpatentability that were all found deficient by the PTAB. A299-300. Under § 314(a), the PTAB is not permitted to go beyond the petition to find new prior art, allege new statutory grounds of unpatentability, formulate new combinations of the cited references, or substitute its application of the cited references to the challenged claims or its motivation to combine the cited references. All of that information is required "in the petition." 35 U.S.C. § 312(a)(3); *see also* 37 C.F.R. § 42.104.

Second, PTO has not implemented any regulations which permit the PTAB to formulate a new ground of rejection in an IPR. In contrast, the PTAB is permitted to formulate a new ground of rejection in an appeal during examination

and reexamination.  37 CFR § 41.50(b) (*ex parte* reexamination appeals); 37 CFR

§ 41.77(b) (*inter partes* reexamination appeals).  However, the PTAB must

designate the new ground of rejection as "new" and permit the appellant to reopen

prosecution or request a rehearing.  *Id.*  No such regulations exist for IPR, and this

is consistent with Congress express goal of preventing challenges in an IPR

proceeding from "mushrooming" beyond those presented in the petition.  C.Br. 22-

23.

Finally, in the context of examination and reexamination, this Court has

repeatedly held that "the ultimate criterion of whether a rejection is considered

'new' in a decision by the Board is whether applicants have had fair opportunity to

react to the thrust of the rejection."  *In re Leithem*, 661 F.3d 1316, 1319 (Fed. Cir.

2011).  "Mere reliance on the same statutory basis and the same prior art

references, alone, is insufficient to avoid making a new ground of rejection when

the Board relies on new facts and rationales not previously raised to the applicant

by the examiner."  *Id.*  That is, "when reliance upon such facts changes the thrust

of the rejection, the Board's action 'does everything but cry out for an opportunity

to respond.'"  *Id.*  (quoting *In re Moore*, 444 F.2d 572, 574-75 (CCPA 1971)).

Further, "[o]rdinarily, citation by the board of a new reference…and reliance

thereon to support a rejection, will be considered as tantamount to the assertion of

a new ground of rejection." *In re Biedermann*, 733 F.3d 329, 344 (Fed. Cir. 2013) (quoting *In re Boon*, 439 F.2d 724, 727-28 (CCPA 1971)).

There can be no serious dispute that the PTAB relied on new assertions of fact and new rationales when combining Aumayer, Evans and Wendt and Tegethoff, Awada, Evans and Wendt and applying these combinations to claims 10 and 14. The PTAB expressly rejected Garmin's contentions that Aumayer anticipated claim 10 and the combination of Aumayer and Evans rendered claim 14 obvious. A299-230. The PTAB (not Garmin) relied on Wendt to fill the gap left by Aumayer, and the PTAB (not Garmin) ginned up the rationale for using Wendt as a basis to combine Aumayer and Evans. Accordingly, these grounds were "new" and such is not permitted in an IPR.

Cuozzo has not been provided the opportunity to respond to the PTAB's new grounds of rejection. Under § 313, the patent owner is provided the opportunity to file a preliminary response "to the petition." 35 U.S.C. § 313. Obviously, Cuozzo could not have addressed the new grounds formulated by the PTAB, because they were not in Garmin's Petition and created only in the institution decision. Even after institution, the patent owner can only file a response "to the petition." 35 U.S.C. § 316(a)(8). In both cases, the patent owner can only respond to the petition, not the institution order.

Accordingly, the PTAB's application of Aumayer, Evans and Wendt and Tegethoff, Awada, Evans and Wendt to claims 10 and 14 were new grounds of rejection, which are impermissible in IPR.  35 U.S.C. § 312(a)(3); *see also* 37 C.F.R. 42.104).

### C. The PTAB Construed "Integrally Attached" Under The Incorrect Standard And To The Exclusion Of Embodiments Of The Invention

#### 1. PTO's justifications for using the BRI standard ring hollow in the context of the new IPR procedure

PTO proffers three justifications for using the BRI standard:  (1) "it's always been this way," (2) the patent owner has "an opportunity" to amend the claims, and (3) a combined proceeding would require application of different claim construction standards.  PTO.Br. 40-41.  All of these reasons are easily debunked.

First, the "it's always been this way" rationale carries no weight in the context of IPR, a new procedure which PTO has never implemented.  As PTO admits, IPR is not examinational.  PTO.Br. 37.  Yet, the PTO asserts that this Court's precedent related to appeals from examinational proceedings somehow supports use of the BRI standard in IPR.  PTO.Br. 41.  Because there is no substantive similarity between IPR and any proceeding the PTO has ever conducted (C.Br. 20-24), it is only logical that PTO should not be relying on past, examinational practices to implement a process in which examiners never participate.

Second, "the *opportunity* to seek to amend the patent" in IPR (PTO.Br. 41) is not in any way coextensive with the *right* to amend in examinational proceedings before the PTO. 37 C.F.R. § 1.121 ("Amendments in applications…are made by filing a paper…*directing* that specified amendments be made."). The AIA places severe strictures on a patent owner's ability to amend the claims, none of which occur in the examinational context. Most importantly, the patent owner has no right to amend the claims (as he does in examination); an amendment in IPR requires a motion in which the patent owner bears the burden of proving that the amendment should be entered. 35 U.S.C. § 316(d)(1); 37 C.F.R. § 42.121. And, the patent owner is allowed only one such motion. 35 U.S.C. § 316(d)(1); 37 C.F.R. § 42.121. Further, the only amendment allowed in IPR is the cancellation of claims and/or the substitution of claims; no new, additional claims are permitted as in examinational proceedings. 35 U.S.C. § 316(d)(1); 37 C.F.R. § 42.121. This extremely narrow "opportunity" to amend the claims stands in stark contrast to the broad right to amend the claims, which includes filing new claims, in the examinational context, and does not justify use of the BRI standard.

Finally, PTO asserts that if it is required to employ different standards in different proceedings -- the BRI standard in the examinational context and the *Phillips* standard in IPR – such "would also hamper the USPTO's statutory authority to combine different proceedings concerning the same patent." PTO.Br.

43.  This makes little sense.  The combined proceeding would not be some

mythical creature which is, for example, half-reexamination and half-IPR.  The

combined proceeding would have to be designated as an examination, a reissue,  a

reexamination, *or* a post-grant proceeding.  Those are the only proceedings that

PTO has the authority and regulations to conduct.  Further, the PTO already

employs multiple standards in the same proceeding, *e.g.*, applying different claim

construction standards in a reexamination before and after patent expiration.

Manual of Patent Examining Procedure (MPEP) § 2258 (available at

http://www.uspto.gov/web/offices/pac/mpep/s2258.html) (last visited June 23,

2014).

Accordingly, there is no justification for using the BRI standard in the non-

examinational setting of IPR.

### 2.  The PTO exceeded its rulemaking authority by implementing the BRI standard in IPR

Congress has granted PTO only "procedural" rulemaking authority.  *Tafas v.

Doll*, 559 F.3d 1345, 1352 (Fed. Cir. 2009).  But, the BRI standard is a substantive

rule that affects an individual right, *i.e.*, the monopoly right conferred by the patent

grant.  35 U.S.C. § 154(a)(1) ("Every patent shall contain…a grant to the

patentee…of the *right* to exclude others from making, using, offering for sale, or

selling the invention").  PTO asserts that its authority to promulgate rules

implementing the BRI standard is derived from (i) its authority under § 316(a)(4)

18

to prescribe regulations "establishing and governing inter partes review under this chapter and the relationship of such review to other proceedings under this title," and (ii) prior practice in examinational proceedings. PTO.Br. 44-45.

This Court has previously held that "Congress has not vested the Commissioner with any general substantive rulemaking power." *Tafas*, 559 F.3d at 1352. Yet, PTO asserts that Congress "hid the elephant in the mousehole" by providing substantive rulemaking authority in a subsection of 35 U.S.C. § 316. *Whitman v. American Trucking Association*, 531 U.S. 457, 468 (2001). To the contrary, § 316(a) sets forth thirteen separate areas of regulations that are required for IPR. As the PTO implicitly realizes (by citing solely to subsection (4)), all of these areas are directed to procedural facets of IPR. *See, e.g.*, § 316(a)(1) (filings not under seal should be made publicly available); § 316(a)(6) (sanctions may be administered); § 316(a)(7) (protective orders are available). However, PTO claims that the terms "establishing and governing" in subsection (a)(4) do not relate to procedural requirements, like all of the other subsections of § 316(a), but give it the broad power to promulgate substantive standards for claim interpretation. PTO.Br. 44. But when reading (a)(4) *in pari materia* with the twelve other subsections of § 316(a), it is abundantly clear that PTO's rulemaking authority is limited to procedural facts of IPR. *See Thermtron Products, Inc. v.*

*Hermansdorfer*, 423 U. S. 336, 345 (1976) (holding that statutory subsections are "*in pari materia*" and "must be construed together").

PTO further asserts that the BRI standard is "procedural," because it "does not prescribe what is patentable and what is not" and "[i]t is simply 'an examination expedient.'" PTO.Br. 45 (quoting *In re Skvorecz*, 580 F.3d 1262, 1267 (Fed. Cir. 2009)). To the contrary, it is hard to imagine a more substantive consideration than the scope of the claims, which defines the boundaries of the monopoly right granted to the patentee. 35 U.S.C. § 154(a)(1) ("Every patent shall contain…a grant to the patentee…of the ***right*** to exclude others from making, using, offering for sale, or selling the invention"). Further, PTO admits that the BRI standard is used only as "an examination expedient," but has also admitted that IPR is not an examinational proceeding. PTO.Br. 37. Because IPR is not examinational, the BRI standard has no place in it.

### 3. The PTAB's construction of "integrally attached" is erroneous under both *Phillips* and BRI

Despite PTO's contention (PTO.Br. 28-29), this Court reviews claim construction *de novo*, regardless of whether such construction was issued by a federal court or the PTO. *Lighting Ballast Control LLC v. Philips Elecs. N.A. Corp.*, 744 F.3d 1272, 76–77 (Fed. Cir. 2014) (*en banc*); *In re Baker Hughes, Inc.*, 215 F.3d 1297, 1301 (Fed. Cir. 2000) ("Although the PTO gives claims the broadest reasonable interpretation consistent with the written description, claim

construction by the PTO is a question of law that we review de novo, just as we review claim construction by a district court.") (internal citations omitted). Accordingly, no deference is due to the PTAB's claim construction.[1]

### a. The PTAB's construction of "integrally attached" is contrary to the specification

The PTAB cited only one statement from the specification as support for its construction: "[s]peedometer 12 *has* a backplate 14…, speed denoting markings 16…, a colored display 18…, and a [] needle 20." A9. This statement expressly states that the colored display 18 is a component of the speedometer 12. Despite this clear statement, the PTAB held that, "[a]ll of those other components, exclusive of the [colored display], form the speedometer, which is separate from the colored display." A9. It is almost impossible to divine how the PTAB could possibly assert that its construction is consistent with the specification when it is based entirely on a wholesale rewrite of the specification.

PTO asserts that the PTAB's claim construction is not inconsistent with the specification, because "the statements in the specification do not use the term 'integrally attached.'" PTO.Br. 48. Cuozzo agrees that the term "integrally

---

[1] PTO questions why Cuozzo advocates for its construction of "integrally attached." PTO.Br. 46. If this Court agrees with Cuozzo's construction but affirms the PTAB's decision on patentability (which Cuozzo disputes under its construction and the PTAB's construction), a remand is appropriate for reconsideration of Cuozzo's motion to amend, which was denied solely based on the PTAB's construction of "integrally attached." A47-49.

attached" is not used in the specification, but disagrees that the specification can be disregarded when determining the meaning of "integrally attached" simply because that term is not used. Indeed, the PTAB expressly stated that its construction of "integrally attached" was derived solely from the statement that the speedometer 12 "has" a colored display 18. A9. Clearly, the PTAB did not disregard this statement in formulating its construction; it simply chose to ignore the fact that the colored display 18 is expressly included as one of the components of the speedometer 12.

PTO further supports the PTAB's erroneous conclusion that the colored display could be not adjusted/rotated independently of the speedometer "if the speedometer and colored display were a single liquid crystal display." PTO.Br. 48. This assertion rests on the technically incorrect presumption that a speedometer can be nothing more than an LCD. A speedometer must measure speed, and an LCD cannot measure anything (it is only a display device). Second, the colored display and the speedometer display can be implemented on a single LCD, and both may be adjusted independently by updating two images (one as to current speed and one as to colored indication of current speed exceeding the speed limit). Prof. Morris testified that one of skill in the art at the time invention would have interpreted claims 12 and 18 as encompassing a speedometer that has a colored display which is an LCD, because it would have been less expensive and easier to

22

produce (A310-311), which is consistent with the stated objects of the invention. A56 (3:39-51).

PTO further supports the PTAB's conclusion that "integrally attached" was added to overcome the rejection in view of Awada (which Cuozzo does not dispute), but goes one step further to say that this term "require[d] that the speedometer be physically connected to the colored display, not to require a single display." PTO.Br. 48. To the contrary, Awada was distinguished on the fact that it did not have "an integrated display" like the present invention. A103. There was no statement by the applicant regarding a physical connection between the speedometer and the colored display; in fact, the applicant never used the term "colored display" in his arguments regarding Awada. *Id.*

Accordingly, "integrally attached" should be construed consistent with its plain and ordinary meaning as understood by one of skill in the art, in view of the specification and the prosecution history, as "joined or combined to work as a complete unit."

**D. Claim 10 Is Patentable Over Aumayer, Evans And Wendt**

**1. Aumayer does not disclose a display controller that shows speed readings in violation of "the speed limit at a vehicle's present location"**

It is undisputed that Aumayer's scale mark 127 identifies the speed limit for a particular type of road in a region or area in which the vehicle is traveling. PTO

erroneously asserts that the speed limit for a region or area is "the speed limit at a vehicle's present location." PTO.Br. 52.

PTO first cites to Aumayer's use of an on-board GPS to determine the vehicle's position. PTO.Br. 53. From this statement, PTO asserts that "this is no different from what claim 10 recites." PTO.Br. 53. It is unclear what comparison PTO is drawing, because the cited portion of Aumayer simply indicates that locations may be obtained by GPS, which is not controversial. In any event, the scale mark 127 denotes "the speed limit for *a particular type* of street or road [in a region], so that e.g., the maximum permitted speed is 50 km/hr in places in Germany." A216 (5:2-6). Aumayer, though capable of identifying the vehicle's present location, would never provide any indication of speed limit changes on the same road within a region or across multiple roads of the same type within a region. For as long as the vehicle is on a particular type of road, the scale mark 127 will not move. In contrast, if a vehicle using the present invention were traveling on a town road with a 35mph speed limit and went past a school in which the speed limit changed to 25mph, the display controller would adjust the colored display to show that speeds over 25 mph were in violation of the speed limit. A51 (Abstract : the invention "eliminates the need for the driver to take his eyes off *the* road to look for speed limit signs"). In contrast, Aumayer would never adjust the

scale mark 127 to reflect the 25mph speed limit, because the vehicle is on the same road – the type of road has not changed.

PTO further cites to Aumayer's definition of "region" and asserts in conclusory fashion that this somehow alters the undisputed fact that the speed limit of Aumayer is for a particular type of street or road in a region. PTO.Br. 53. Defining "region" to encompass other "governmentally defined boundaries…in which the governmentally prescribed physical units of speed values are the same" simply means that "region" is not limited to a state, a country or a city or metropolitan area, but may encompass a borough, a town or a neighborhood. Regardless, there is no definition of "region" that would mean "vehicle's present location" in the context of the '074 Patent, particularly when Aumayer has clearly expressed the distinction.

Finally, PTO asserts that Aumayer's regional road-type speed limit is no different from the "speed limit" in the '074 Patent, because the '074 Patent references a "regional speed limit database." PTO.Br. 54. But, notably, claim 10 and the specification consistently refer to the "vehicle's present location" not the region in which the vehicle's present location is situated. See also A51 (Abstract: the invention "eliminates the need for the driver to take his eyes off *the* road to look for speed limit signs"). Thus, the reference to a "regional speed limit database" does not alter the express claim language, "vehicle's present location."

## 2.   There is no motivation to combine Aumayer, Evans and Wendt

One of ordinary skill in the art would not combine the dynamic, continuously controlled display device 211 of Aumayer with the immovable plate 12 of Evans or the manually rotated pointer 16 and rubber suction cup unit 18 of Wendt.  C.Br. 48.  The PTAB stated as much in its rejection of Garmin's allegation that one of skill in the art would combine Aumayer and Evans.  A291-292.

PTO cites to this Court's holding *Leapfrog Enters., Inc. v. Fisher-Price, Inc.*, 485 F.3d 1157, 1161-62 (Fed. Cir. 2007)) and vaguely asserts that "it would have been reasonably obvious to one of ordinary skill in designing speedometers." PTO.Br. 55-56.  However, PTO does not indicate what would have been obvious, only that "it" would have been obvious.  It is unclear whether this conclusory statement refers to Garmin's alleged motivation to combine the references, the PTAB's alleged motivation to combine the references, or how the combination could be accomplished.  Further, in *Leapfrog*, the Court was addressing whether a claim to an electronic device with "a processor and related electronics" could be obvious in view of a prior art device with "an electric motor and mechanical structures."  *Id.* at 1161.  Both the invention and the prior art device were automated, but in different ways.  That is not the case here.  Aumayer is fully automated with processors and related electronics (A213 (Figure 3)), whereas Wendt and Evans rely entirely on manual operation.  A257 (2:54-59) ("layer 16 of

26

contact adhesive" in Evans is used to affix the indicator 10 to the speedometer cover); A271 (1:22-26) ("speed limit indicator [of Wendt]…[is] adjustable in a rotative sense so that the driver or his assistant can constantly move this speed indicating pointer").

Further, Aumayer's statement, "it is also possible to use a commercial combined apparatus with mechanical display elements for the display device" is vague and does not provide any details about such an embodiment, as the PTAB expressly held. A288-289 ("No specific embodiment of a combine apparatus with mechanical elements is described in [Aumayer in] sufficient detail. Even Petitioner has not explained how such general disclosure meets the requirement of 'integrally attached' between the speedometer and the colored display."); A29 ("specific details of that mechanical embodiment [in Aumayer] are not described").

### E. Claim 10 Is Patentable Over Tegethoff, Awada, Evans And Wendt

#### 1. Tegethoff does not disclose a display controller that shows speed readings in violation of "the speed limit at a vehicle's present location"

It is undisputed that the "maximum permissible speed" in Tegethoff is determined in only one of three ways – manually, by a navigation element and traffic database, or by receiving information for traffic control. A240 (1:13-18). None of these three ways incorporates "a legislative [speed] limit." C.Br. 54-55. Further, even if the "warning" regarding the "legislative limit" was "sometimes

[displayed]" as PTO alleges, it has no stated relationship to the vehicle's present location. In fact, as the PTAB acknowledged, Tegethoff does not explain when such a warning would be displayed or how its system would acquire information related to the "legislative limit." A41. However, substituting its own rationale for applying this combination to the claims, the PTAB asserted that Awada cures this deficiency. *Id.* Garmin asserted that Tegethoff alone met this element (A185-186); however, the PTAB required Awada to fill the gap left by Tegethoff. This new rationale was an improper new ground of rejection, and in any event, Tegethoff's warning as to the "a legislative limit" is not akin to the legal speed limit at the vehicle's present location, as required by claim 10.

## 2. Tegethoff and Awada are fundamentally different, not alternatives

The sole focus of Awada is to provide "a constant indication of t***he posted speed limit***." A265 (1:18-21). Indeed, the numerical display 110 "show[s] the posted speed limit." *Id.* (2:28-30). Awada never discloses or suggests that the posted speed limit can be manually set or adjusted based on traffic information. Indeed, it would not be a "slight modification," as alleged by PTO (PTO.Br. 60), to deviate from Awada's stated and only goal of displaying the posted speed limit; it would render Awada's numerical display 110 inoperable for its intended purpose.

PTO faults Cuozzo for failing to cite evidentiary support in the record for the argument that Tegethoff cannot be combined with Awada. PTO.Br. 60. First, it

was Garmin's burden to prove unpatentability, not Cuozzo's burden to establish patentability. 35 U.S.C. § 316(e). Second, Garmin's proffered basis for combining Tegethoff and Awada was related solely to use of a GPS receiver. A184. This is not the same rationale provided by the PTAB, which was focused on identifying the speed limit in Awada and using Tegethoff's "maximum permissible speed." A42. Under § 316(a)(8), Cuozzo was limited to responding "to the petition," not the new rationales formulated by the PTAB in institution. Finally, in any event, Cuozzo cited to various statements in Awada and Tegethoff which clearly explain that their combination would produce an inoperable result. C.Br. 56-57.

### F. Any Modification Of The PTAB's Claim Construction Requires Remand For Reconsideration Of Cuozzo's Motion To Amend

If this Court modifies the PTAB's claim construction, remand is the appropriate outcome for reconsideration of Cuozzo's motion to amend. The PTAB denied Cuozzo's motion based solely on its erroneous interpretation of "integrally attached." A47-48. Thus, it was an abuse of discretion to deny Cuozzo's motion, because the PTAB's construction was erroneous conclusion of law. *Abbott Labs. v. TorPharm, Inc.*, 503 F.3d 1372, 1380 (Fed. Cir. 2007) "[a]n abuse of discretion may be established under Federal Circuit law by showing that the court made a clear error of judgment in weighing the relevant factors or exercised its discretion

based on an error of law or clearly erroneous fact finding.") (citing *Lab. Corp. of Am. Holdings v. Chiron Corp.*, 394 F.3d 1327, 1331 (Fed. Cir. 2004)).

## II.    CONCLUSION

For the foregoing reasons, the Court should reverse the PTAB's final written decision cancelling claims 10, 14 and 17.  Alternatively, the Court should reverse and remand for reconsideration of Cuozzo's motion to amend the claims based on the correct interpretation of "integrally attached."

Respectfully submitted,

/s/ John R. Kasha
John R. Kasha
KASHA LAW LLC
14532 Dufief Mill Road
North Potomac, MD  20878
(703) 834-1886

*Counsel for Appellant*

# CERTIFICATE OF FILING AND SERVICE

I hereby certify that, on this the 23rd day of June, 2014, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will send notice of such filing to the following registered users:

Nathan K. Kelley
Robert J. McManus
Scott Weidenfeller
UNITED STATES PATENT AND
  TRADEMARK OFFICE
OFFICE OF THE SOLICITOR
P.O. Box 1450
Mail Stop 8
Alexandria, VA  22213

*Counsel for Intervenor*

I further certify that, upon acceptance and request from the Court, the required paper copies of the foregoing will be deposited with United Parcel Service for delivery to the Clerk, UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT, 717 Madison Place, N.W., Washington, D.C. 20439.

The necessary filing and service were performed in accordance with the instructions given to me by counsel in this case.

/s/ Adrienne R. Acra-Passehl
Adrienne R. Acra-Passehl
GIBSON MOORE APPELLATE SERVICES
421 East Franklin Street, Suite 230
Richmond, VA  23219

## CERTIFICATE OF COMPLIANCE
### With Type-Volume Limitation, Typeface Requirements,
### And Type Style Requirements

1.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

      this brief contains 6,910 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

      this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 Times New Roman.


Dated:  June 23, 2014          /s/ John R. Kasha
                                     John R. Kasha
                                     KASHA LAW LLC
                                     14532 Dufief Mill Road
                                     North Potomac, MD  20878
                                     (703) 834-1886

                                     *Counsel for Appellant*